IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY


**WESTFIELD INSURANCE COMPANY,**

      **Plaintiff,**

v.

                                     **Civil Action No. 5:14-CV-25227**
                                         **Honorable Irene C. Berger**

**PINNACLE GROUP, LLC D/B/A**
**AARON'S, JAMES P. BURMER AND**
**RENEE L. BURMER,**

      **Defendants.**


## WESTFIELD INSURANCE COMPANY'S MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

      COMES NOW the Plaintiff Westfield Insurance Company ("Westfield"), by counsel, and

states as follows in support of its *Motion For Summary Judgment*:

### Introduction

      This Declaratory Judgment action arises from claims asserted by Defendants James and

Renee Burmer against Defendant Pinnacle Group, LLC, d/b/a Aaron's ("Pinnacle") in Civil Action

No. 13-C-297 in the Circuit Court of Mercer County, West Virginia and  Civil Action No. 13-C-

605B, filed in the Circuit Court of Raleigh County, West Virginia.[1]  The Burmers allege Pinnacle's

misconduct and violations of various consumer protection statutes in connection with efforts to

---

      [1] After Defendant Pinnacle filed a collection action against the Burmers in Mercer County
(Civil Action No. 13-C-297), the Burmers filed their own separate Complaint against Pinnacle in
Raleigh County (Civil Action No. 13-C-605B).  The separate actions have since been consolidated
in  Mercer County and are both stayed pending the resolution of the insurance coverage issue in this
action.

28044/853

collect under a rent-to-own contract. (See **Exhibit A**, the Burmers' original Complaint in the Raleigh County action.) At the time of the alleged misconduct, Pinnacle was insured under Westfield Commercial General Liability Policy No. CMM-00331174. (See **Exhibit B**, relevant portions of the Westfield Policy.[2]) The Westfield Policy includes a Commercial Umbrella Coverage, which is subject to the same material and relevant terms, conditions, limitations, definitions and exclusions as the Westfield Policy's Commercial General Liability Coverage (See **Exhibit B**).[3]

Because Westfield's Policy provides general liability coverage for "bodily injury" or "property damage" caused by an "occurrence" and for "personal and advertising injury" liability, and does not provide coverage for claims such as those asserted by the Burmers, Westfield denied that the Policy provides coverage and filed this declaratory action seeking confirmation of its coverage position. In response, Pinnacle filed its *Answer and Counterclaims*, asserting that Westfield had breached its contract with Pinnacle, acted in bad faith, and violated West Virginia's Unfair Trade Practices Act during its handling of the Burmers' claim. [Doc. 11] The parties have engaged in discovery. There is no genuine issue of fact to be decided by a jury. Westfield now asks the Court to find that it is entitled to summary judgment pursuant to *Rule 56* of the *Federal Rules Of Civil Procedure*.

---

[2] Due to the voluminous nature of the Westfield Policy, only those relevant portions relating to liability coverages have been included. Should the Court wish, Westfield can provide the remaining portions of the Policy dealing with first-party property coverage and auto coverage.

[3] Since the Umbrella Coverage includes the same material and relevant terms, conditions, limitations, definitions and exclusions, the provisions of the same have not been recited in this Memorandum.

## Statement of Facts

### *The Underlying Complaint*

The Burmers' original Complaint in Civil Action No. 13-C-605B asserts various claims against Pinnacle based upon Pinnacle's efforts to collect under a consumer rent-to-own contract. In particular, the Burmers allege that they were in arrears on an alleged indebtedness to Pinnacle Group. (See **Exhibit A,** at Paragraph 3.) The Burmers go on to assert in Count I of their original Complaint that they are "persons" under the definition of Article 2 of the West Virginia Consumer Credit Protection Act, and are entitled to the remedies set forth in the Act, and that Pinnacle is a debt collector as defined by the Act. (See **Exhibit A,** at Paragraphs 5 and 6.) The Burmers assert that Pinnacle Group attempted to collect a debt by coercion, in an unreasonable, oppressive or abusive manner towards them; caused their phone to ring or engaged persons including the Burmers in telephone conversations repeatedly or continuously at unusual times or at times known to be inconvenient; utilized fraudulent, deceptive or misleading representations or means in an attempt to collect a debt; and used unfair or unconscionable means to collect a debt from the Burmers. (See **Exhibit A**, at Paragraph 7.) As a result of Pinnacle's alleged actions, the Burmers assert that they have suffered annoyance, inconvenience, harassment, bother, upset, anger, indignation and distress. (See **Exhibit A**, at Paragraph 8.)

The Second Count of the Burmers' original Complaint alleges that Pinnacle, with the intent to harass them, used an electronic communication device to make contact with the Burmers after being requested by them to desist from contacting them, in violation of *W. Va. Code §61-3C-14(a)(2)*. (See **Exhibit A,** at Paragraph 11.) The Burmers allege that this conduct injured them, as provided by provisions of the West Virginia Computer Crime and Abuse Act, and they seek recovery

28044/853

3

under that Act. (See **Exhibit A,** at Paragraphs 12, 13 and 14.) Similarly, the Third Count of the Burmers' original Complaint alleges violation of the Telephone Harassment statute by Pinnacle, and asserts that Pinnacle made or caused to be made telephone calls to the Burmers, which caused the Burmers' phone to ring repeatedly or continuously, with the intent to harass them. As a result, the Burmers allege injury under the provisions of *W. Va. §61-8-16(a)(3)*. (See **Exhibit A,** at Paragraphs 16, 17 and 18.)

The Fourth Count of the Burmers' original Complaint is for intentional infliction of emotional distress, and alleges that Pinnacle's conduct was atrocious and intolerable and so extreme as to exceed the bounds of decency. The Burmers assert that Pinnacle adopted policies and procedures in violation of West Virginia law, which were designed to have the effect of inflicting emotional distress on consumers. They go on to assert that Pinnacle's conduct and violations of the West Virginia Consumer Credit Protection Act were willful, and that the conduct was criminal in nature. (See **Exhibit A,** at Paragraph 20 and 21.)

Finally, the Fifth Count of the Burmers' original Complaint alleges common law invasion of privacy, and asserts that the Burmers' had an expectation to be free from harassing and annoying telephone calls. They allege that "the acts of the Defendant in placing telephone calls to Plaintiffs' telephone number invaded, damaged and harmed Plaintiffs' right of privacy." (See **Exhibit A,** at Paragraphs 24 and 25.)[4] Based upon their allegations, the Burmers seek damages from Pinnacle for

---

[4]The Burmers filed a Motion to Amend their Complaint/Counterclaim in August, 2014, apparently dropping their original claim for intentional infliction of emotional distress, and adding a new Count related to the alleged violation of the West Virginia consumer Good Rental/Protection Act. *See, Exhibit C.*

annoyance, aggravation, distress, bother and anxiety as well as the statutory damages provided for violations of the various statutes addressed by their claims.

*The Westfield Policy*

The Westfield Policy was effective from March 26, 2013 to March 26, 2014, and provides, in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

      **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

* * *

      **b.**     This insurance applies to "bodily injury" and "property damage" only if:

            **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

            **(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

            **(3)**     Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

* * *

**c.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**o.     Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

* * *

    q.    **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **(1)**    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    **(2)**    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    **(3)**    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

\* \* \*

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1.**    **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may at our discretion investigate any offense and settle any claim or "suit" that may result.  But:

\* \* \*

    b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.**    **Exclusions**

This insurance does not apply to:

a.   **Knowing Violation of Rights Of Another**

"Personal and advertising injury" caused by or at the direction f the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \*

d.   **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

\* \* \*

p.   **Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2)   The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3)   Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

\* \* \*

## SECTION V - DEFINITIONS

\* \* \*

3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

28044/853                                    8

a.    False arrest, detention or imprisonment;

b.    Malicious prosecution;

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.    The use of another's advertising idea in your "advertisement"; or

g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

28044/853

9

## RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.   Exclusion **q.** of Paragraph **2. Exclusions of Section 1 - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

   **2.   Exclusions**

   This insurance does not apply to:

   **q.   Recording and distribution of Material or Information In Violation of Law**

   "Bodily injury" or "property damage" airing directly or indirectly out of any action or omission that violates or is alleged to violate:

   **(1)**   The Telephone Consumer Protection Act (TCPA), including any amendment of our addition to such law;

   **(2)**   The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

   **(3)**   The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

   **(4)**   Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions that addresses, prohibits, or limits the printing dissemination, disposal, collecting, records, sending, transmitting, communication or distribution of material or information.

B.   Exclusion **p.** of Paragraph **2. Exclusions of Section I - Coverage B - Personal and Advertising Injury Liability** is replaced by the following:

28044/853                                    10

2.      **Exclusions**

This insurance does not apply to:

p.      **Recording and Distribution of Material or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)      The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2)      The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)      The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4)      Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that address, prohibits, or limits the printing, disseminating, disposal, collection, recording, sending, transmitting, communicating or distribution of material or information.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL GENERAL LIABILITY EXPANDED ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

28044/853                                             11

F.     **PERSONAL AND ADVERTISING INJURY**

Under **SECTION 1 - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**, the following are added to Item 2. Exclusions:

\* \* \*

O.     **DEFINITIONS**

Under **SECTION V - DEFINITIONS**, item **3**. Is deleted and replaced with the following:

3.     "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

Under **SECTION V - DEFINITIONS**, item **14**. The following is added to the definition of "Personal and advertising injury":

h.     Discrimination or humiliation that results in injury to the feelings or reputation of a natural person but only if such discrimination or humiliation is:

(1)     not done intentionally by or at the direction of:

(a)     The insured; or

(b)     Any "executive officer," director, stockholder, partner, member or manager (if you are a limited liability company) of the insured; and

(2)     Not directly or indirectly related to the employment, prospective employment, past employment or termination of employment of any person or persons by any insured.

\* \* \*

\* \* \*

(See **Exhibit B**.)  Because the Westfield Policy is inapplicable to provide coverage for the Burmers'

claims against Pinnacle, Westfield has denied coverage and now asks the Court for summary judgment in this case.

## LEGAL STANDARD

Summary judgment is mandated if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. The movant's burden "may be discharged by 'showing' - - that is, pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To defeat summary judgment, nonmovants must present "concrete evidence from which a reasonable juror could return a verdict in [their] favor[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Fed. R. Civ. P. 56(c), (d)*.

## DISCUSSION

Inasmuch as the conduct at issue in this case occurred in West Virginia and involved Defendant Pinnacle's operations at its Mercer County location, West Virginia law governs the subject claims. Under West Virginia law, liability insurance creates two (2) duties for the insurer: the duty to defend and the duty to provide coverage. *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 194, 342 S.E.2d 156 (1986). The insurer must defend its insured if the allegations and the facts behind them "are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Id.*; Syl. Pt. 6, *Farmers & Mechs. Mut. Ins. Co. v. Cook*, 210 W. Va. 394, 557 S.E.2d 801 (2001); *Horace Mann Ins. Co. v. Leeber*, 180 W. Va. 375, 378, 376 S.E.2d 581 (1988) (citing *Pitrolo*). The insurer must defend all the claims if its policy could apply to any of them, but it "need not defend ... if the alleged conduct is entirely foreign to the risk insured against." *Leeber*, 180 W. Va. at 378.

28044/853                                    13

Clear insurance policy provisions are to be applied. *Cook*, 210 W. Va. at Syl. Pt. 5 (citing Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W. Va. 430, 345 S.E.2d 33 (1986)); *Green v. Farm Bureau Mut. Auto Ins. Co.*, 139 W. Va. 475, 80 S.E.2d 424, 426 (1954). An insurer may validly limit coverage, and policy provisions that limit coverage are placed in a policy for that very reason. *Green*, 80 S.E.2d at 426. Insurance coverage is a matter of law if material facts are undisputed. Syl. Pt. 1, *Tennant v. Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002). The only facts material to insurance coverage in this case are the Policy's terms and the Burmers' allegations in the underlying state action. *Leeber*, 376 S.E.2d at 584. *See also* **Exhibit A**, the Burmers' Complaint.

I.      **The Burmers did not allege any "bodily injury" "property damage" or "occurrence" which would trigger coverage under the Westfield Policy.**

The Westfield Policy provides general liability coverage to pay those sums which Pinnacle becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence," to which the Policy applies. Here, there is no allegation or claim for "bodily injury," as defined by the Policy. Nor do the Burmers present a claim for "property damage," which is defined by the Policy as physical injury to tangible property or the loss of use of property due to an "occurrence." (See **Exhibit B**) Instead, the Burmers assert that Pinnacle annoyed and aggravated them by making harassing phone calls and violating various consumer protection statutes in connection with its efforts to collect a debt. (See **Exhibit A**.) No property is alleged to have been damaged and the Burmers do not seek to recover for any bodily injury or for loss of use of any property due to an "occurrence." (See **Exhibit A**.)

In addition to the failure to assert any claim for "bodily injury" or "property damage," the Burmers also do not assert a claim for loss or damage arising from an "occurrence," defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general

harmful conditions." (See **Exhibit B**.)  Instead, the Burmers' allege intentional and malicious

conduct. (See **Exhibit A**.)  In that regard, the term "Accident" has been found to be unambiguous:

its "common and everyday meaning ... is a chance event or event arising from unknown causes."

*West Virginia Fire & Cas. Co. v. Stanley*, 216 W. Va. 40, 49, 602 S.E.2d 483, 492 (2004).  "'To be

an accident, both the means and the result must be unforeseen, involuntary, unexpected, and

unusual.'"   *Id.* (citations omitted).  Here, all of the Burmers' allegations concern Pinnacle's

intentional conduct. No accident is alleged or at issue. Therefore, coverage under the Commercial

General Liability provisions of the Westfield Policy is not triggered.

Like the Commercial General Liability Coverage, the Commercial Umbrella Coverage

provisions of the Westfield Policy require that any claim for "bodily injury" or "property damage"

be caused by an "occurrence" for coverage to apply. (See **Exhibit B**.)  Because there is no claim by

the Burmers for either "bodily injury" or "property damage" as defined by the Commercial Umbrella

provisions of the Policy (See **Exhibit B**), there is no coverage for the same reasons as discussed

above.

**II.    The Burmers have also not asserted a claim for personal or advertising injury.**

In response to Westfield's denial of coverage, Pinnacle has suggested that the Burmers'

claims for "invasion of privacy" are covered under the Westfield Policy as "personal or advertising

injury." However, that suggestion fails to recognize that the Westfield Policy defines "personal and

advertising injury" as "injury arising out of one or more of the following: false arrest, detention or

imprisonment; malicious prosecution; wrongful eviction from, wrongful entry into, or invasion of

the right of private occupancy of a room, dwelling or premises that a person occupies, committed

by or on behalf of its owner, landlord or lessor; oral or written publication of materials that slanders

or libels a person; oral or written publication of material that violates a person's right of privacy; the use of another's advertising idea; infringing upon another's copyright, trade dress or slogan, or discrimination or humiliation." (See **Exhibit B**.) The Burmers' Complaint asserts no such claims. While there is a claim for "invasion of privacy," that claim relates to the Burmers' alleged right to be free from harassing and annoying telephone calls, and does not relate to the wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupied, committed by or on behalf of its owner, landlord or lessor. Therefore, none of the Burmers' allegations constitute "personal or advertising injury" and coverage under the Westfield Policy is inapplicable under the Commercial General Liability Coverage and the Commercial Umbrella Coverage.

### III. Coverage for the Burmers' claims is also expressly excluded under the terms of the Westfield Policy.

Even assuming, *arguendo*, that coverage under the Policy has been "triggered" by the claims and allegations of the Burmers, the Westfield Policy contains relevant exclusions which are applicable and exclude coverage. For example, the Policy excludes coverage for expected or intended injury. (See **Exhibit B**.) Therefore, to the extent that the Burmers allege that the conduct of Pinnacle was wilful or intentional, coverage under the Policy is expressly excluded.

The Westfield Policy also excludes coverage for injury or damage arising out of a criminal act, or arising directly or indirectly out of any act or omission that violates the Telephone Consumer Protection Act ("TCPA"); the Can-SPAM Act of 2003, the Fair Credit Reporting Act ("FCRA"), including the Fair and Accurate Credit Transaction Act ("FACTA"), or any other Federal, State or local statute, ordinance or regulation that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communication or distribution of material or

information.  Under the plain and unambiguous language of those exclusions, there is no coverage

for Pinnacle's alleged violations of statute. (See **Exhibit A**.) Because intentional harassment and the

violation of various consumer protection statutes are expressly excluded under the Westfield Policy,

and because the Policy excludes coverage for injury or damage arising out of a criminal act,[5]

Westfield has no duty to defend or indemnify Pinnacle with respect to the Burmers' claims.

### IV.   There is no evidence to support Pinnacle's claims for "bad faith" and violations of the Unfair Trade Practices Act or its claims for punitive damages and Westfield is entitled to summary judgment with respect to those claims.

Because there is no coverage for the underlying claims against Pinnacle, there is also no

evidence to support Pinnacle's "bad faith" claims against Westfield.  In that regard, under West

Virginia law, if there is no coverage under a Policy, it extinguishes any bad faith claim arising out

of the denial of coverage pursuant to *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co.*, 204 W. Va.

465, 484, 513 S.E.2d 692 (1998) (" Our case law is clear that in order for a policyholder to bring a

common law bad faith claim against his insurer, according to *Hayseeds, Inc. v. State Farm Fire &*

*Cas.,* 177 W. Va. 323, 352 S.E.2d 73 (1986), and its progeny, the policyholder must first

substantially prevail against his insurer on the underlying contract action").  Because there is no

coverage under the Westfield Policy for the reasons set forth above, there is no basis for any claim

of bad faith or any recovery of attorney's fees or other damages by Pinnacle.  Similarly, because

Westfield has a valid basis for its refusal to defend and indemnify Pinnacle under the terms of its

Policy, Pinnacle has no valid claim for attorneys fees under *Aetna Cas. & Sur. Co. v. Pitrolo*, 176

W. Va. 190, 342 S.E.2d 156 (1986).  In that regard, the Court in *Pitrolo* noted:

---

[5]The Burmers' Complaint alleges that Pinnacle violated various provisions of  the West
Virginia Computer Crime And Abuse Act, a criminal statute. (See **Exhibit A**, at Paragraph 12.)

> Most Courts have held that where an insured is required to retain counsel to defend himself in litigation because his insurer has refused **without valid justification** to defend him, in violation of its insurance policy, the insured is entitled to recover from the insurer the expenses of the litigation, including costs and reasonable attorney's fees. . .**The theory for allowing this recovery is that these damages directly resulted from the insurer's breach of contract.**

*Id.*, 176 W. Va. at 193 (citations omitted). Here, as discussed above at length, Westfield had a valid policy basis for its decision to refuse defense and indemnification to Pinnacle and did not breach the Policy by doing so.

The existence of a valid basis for refusing coverage also defeats Pinnacle's claims for punitive damages. The West Virginia State Supreme Court addressed the issue of punitive damages in the context of insurance bad faith in the cases of *Hayseeds*, and *McCormick v. Allstate Ins. Co*, 202 W. Va. 535, 505 S.E.2d 454 (1998), and indicated that a claimant must present evidence of actual malice in order to support a claim for punitive damages. The Court in *Hayseeds* stated, "[b]y 'actual malice' we mean that the [insurance] company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." (footnote omitted). *Hayseeds*, 177 W. Va. at 330-31. In *McCormick*, the Court noted:

> We see no reason why this Court should abandon the "actual malice" standard, with its focus on the insurer's treatment of the policyholder, where, as int eh case *sub judice*, a first-party claim is asserted under the Unfair Claim Settlement Practices Act.

*McCormick*, 505 S.E.2d at 459. The Court went on to state:

> By "actual malice" we mean that the insurance company actually knew that the policyholder's claim was proper but willfully, maliciously and intentionally utilized an unfair business practice in settling or failing to settle, the insured's claim.

*Id.* Thus, a showing of actual malice is necessary before Pinnacle can recover punitive damages for any alleged "bad faith" or violations of the West Virginia Unfair Trade Practices Act during the

handling of the subject claim.  Here, the evidence clearly establishes that Westfield denied coverage for the claims against Pinnacle based upon the fact that those claims concerned alleged intentional conduct and violations of criminal and other statutes, rather than an accident or occurrence causing bodily injury or property damage or personal and advertising injury.  Westfield certainly did not "know" that the Burmers' claims were covered but deny coverage anyway.  Westfield continues to maintain that the Burmers' claims are excluded from coverage under the Westfield Policy, and Westfield has substantial evidence to support its position, as addressed above.  Pinnacle simply has no evidence to support its "bad faith" and Unfair Trade Practices Act claims or its claims for punitive damages and Westfield is entitled to summary judgment on those claims.

### Conclusion

There is no genuine issue of fact material to the duties of Westfield Insurance Company in this case.  Westfield's Policy affords no coverage for the claims raised in the Burmers' Complaint because there is no claim for either "property damage" or "bodily injury" caused by an "occurrence," and the Burmers have asserted no claim for "personal and advertising injury," and because the Burmers' claims are expressly excluded from coverage by the Policy.  Therefore, Westfield is entitled to summary judgment in this case as a matter of law.

**WESTFIELD INSURANCE COMPANY,**

**By counsel,**

/s/ *Brent K. Kesner*
Brent K. Kesner (WVSB #2022)
Tanya M. Kesner (WVSB #5164)
**Kesner & Kesner, PLLC**
112 Capitol Street
P. O. Box 2587
Charleston, WV  25329
*Phone:* (304) 345-5200
*Fax:* (304) 345-5265
bkesner@kesnerlaw.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT BECKLEY

**WESTFIELD INSURANCE COMPANY,**

      **Plaintiffs,**

v.

                                        **Civil Action No. 5:14-CV-25227**

                                        **Honorable Irene C. Berger**

**PINNACLE GROUP, LLC D/B/A
AARON'S, JAMES P. BURMER AND
RENEE L. BURMER,**

      **Defendants.**

### CERTIFICATE OF SERVICE

    I, Brent K. Kesner, counsel for Plaintiff, do hereby certify that on the **25th day of June, 2015,** I electronically filed the forgoing the **WESTFIELD INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Ancil G. Ramey, Esq.
**Steptoe & Johnson PLLC**
P.O. Box 2195
Huntington, WV  25722-2195
*Counsel for Pinnacle Group, LLC d/b/a Aaron's*

Steven R. Broadwater, Jr., Esq.
**Hamilton, Burgess, Young & Pollard, PLLC**
P.O. Box 959
Fayetteville, WV  25840
*Counsel for James P. Burmer and Renee L. Burmer*

/s/ *Brent K. Kesner*
Brent K. Kesner (WVSB #2022)
**Kesner & Kesner, PLLC**
112 Capitol Street
P. O. Box 2587
Charleston, WV  25329
*Phone:* (304) 345-5200
bkesner@kesnerlaw.com

28044/853