IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

WESTFIELD INSURANCE COMPANY,

        Plaintiff,

v.                                                          CIVIL ACTION NO.   5:14-cv-25227

PINNACLE GROUP, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Plaintiff Westfield Insurance Company's Motion for Summary Judgment* (Document 53), *Westfield Insurance Company's Memorandum in Support of Motion for Summary Judgment* (Document 54), Defendant Pinnacle Group's *Memorandum in Opposition to Westfield Insurance Company's Motion for Summary Judgment* (Document 58), and *Westfield Insurance Company's Reply to Pinnacle Group, LLC's Memorandum in Opposition to Westfield's Motion for Summary Judgment* (Document 59).   The Court has also reviewed *Defendant Pinnacle Group LLC's Motion for Partial Summary Judgment* (Document 55), the *Memorandum of Law in Support of Defendant Pinnacle Group LLC's Motion for Partial Summary Judgment* (Document 56), *Westfield Insurance Company's Response to Pinnacle Group, LLC's Motion for Partial Summary Judgment* (Document 57), and Pinnacle Group's *Reply in Opposition to Westfield Insurance Company's Response to Pinnacle Group, LLC's Motion for Partial Summary Judgment* (Document 60).   In addition, the Court has reviewed all attached exhibits.

For the reasons stated herein, the Court finds that Westfield's motion must be GRANTED, and that Pinnacle's motion must be DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Westfield Insurance Company initiated this action with a *Complaint for Declaratory Relief* (Document 1) filed on August 28, 2014. It named as Defendants Pinnacle Group, LLC, doing business as Aaron's (hereinafter, Pinnacle) and James P. Burmer and Rennee L. Burmer (hereinafter, the Burmers). Pinnacle filed its *Answer and Counterclaims* (Document 11) on October 2, 2014.

The Burmers were customers of Pinnacle. On July 25, 2013, they filed suit against Pinnacle in the Circuit Court of Raleigh County, West Virginia.[1] (Burmer Compl., att'd as Pl.'s Ex. A) (Document 53-1). They allege violations of the West Virginia Consumer Credit and Protection Act (WVCCPA), the West Virginia Computer Crime and Abuse Act, the Telephone Harassment Statute, Intentional Infliction of Emotional Distress, and Common Law Invasion of Privacy. (*Id.*) The Burmers assert that, after they were in arrears on their indebtedness, Pinnacle made debt collection attempts through the use of harassing telephone calls and other communications. (*Id.*, ¶ 3.)

Pinnacle purchased a commercial general liability insurance policy from Westfield with coverage dates of March 26, 2013 through March 26, 2014. (Policy, att'd as Def.'s Ex. A) (Document 55-1, at 2.) The policy provides coverage for "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory." (Policy, Coverage A §

---

1 The Burmers' suit has since been transferred to the Circuit Court of Mercer County, West Virginia.

1(b)(1)) (Document 55-1, at 3.) "Bodily injury" is defined as "bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. 'Bodily injury' includes mental anguish or other mental injury resulting from 'bodily injury'." (Policy, Expanded Endorsement, § O(3)) (Document 55-1, at 42.) "Property damage" is defined as

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

(Policy, § V.17) (Document 55-1, at 17.) An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Policy, § V.13) (Document 55-1, at 17.)

The Policy also provides coverage for "personal and advertising injury." (Policy, Coverage B, §1) (Document 55-1, at 8.) "Personal and advertising injury" is defined to include, as relevant, "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor" and "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." (Policy, §V.14(c) and (e)) (Document 55-1, at 17.)

Both types of coverage include an exclusion for "Distribution of Material in Violation of Statutes." (Policy Endorsement, §§A–B., modifying Coverage A, § 2(q), Coverage B, § 2(p)) (Document 55-1, at 23.) That exclusion provides that the insurance does not apply to injuries or damages:

> arising directly or indirectly out of any action or omission that violates or is alleged to violate:

3

>    (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
>    (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
>
>    (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
>
>    (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(*Id.*)  In addition, the Policy excludes bodily injury or property damage that was "expected or intended from the standpoint of the insured," and personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"  (Policy Coverage A § 2(a); Policy Coverage B § 2(a)) (Document 55-1, at 4, 8.)

Pinnacle claims that it promptly notified its insurance agent of the Burmers' suit, with the understanding that a claim would be submitted when appropriate.  (Jenkins Depo. at 32) (att'd to Def.'s Mot. as Ex. D) (Document 55-4.)  Mr. Jenkins of Pinnacle testified that he was told by his insurance agent that the lawsuit would be covered if Pinnacle was a defendant, although offensive legal action would not be covered.  (*Id.* at 34.)  On June 12, 2014, Westfield sent Pinnacle's counsel a letter denying coverage, finding that the coverage provisions were not applicable, exclusions were applicable, and notice was untimely.  (June 12 Letter, at 20–21) (att'd as Def.'s Ex. I) (Document 55-9.)  After Pinnacle contested the denial of coverage, Westfield sent a second

letter confirming its position that no coverage was available as to any of the claims presented. (Aug. 27 Letter) (att'd as Def.'s Ex. J) (Document 55-10.)

### STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party

5

must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at \*3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, \*3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd*, 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

6

## DISCUSSION

Westfield asserts that it is entitled to summary judgment on its declaratory judgment claims based on the language of the Policy. It argues that the Burmers' complaint does not allege bodily injury, property damage, or an occurrence, as those terms are defined in the Policy. It cites West Virginia case law for the proposition that an accident (as the Policy defines an "occurrence") must arise from an unknown or unexpected cause, while the Burmers' allegations involve intentional acts. Westfield further contends that no claims in the Burmers' complaint constitute a personal or advertising injury under the Policy terms. Furthermore, Westfield argues, policy exclusions apply to the Burmers' allegations, which involve intentional conduct that is either criminal or in violation of a statute limiting the certain communications. Finally, "[b]ecause there is no coverage for the underlying claims against Pinnacle, there is also no evidence to support Pinnacle's 'bad faith' claims against Westfield." (Pl.'s Mem. at 17.)

Pinnacle seeks summary judgment with respect to coverage, and argues that its claim for damages and allegations of bad faith should proceed to trial. It contends that the Burmers' claims are covered by the Policy,[2] highlighting in particular the claim for invasion of privacy. It argues that other courts have found similar definitions of invasion of privacy to be ambiguous, and therefore to provide coverage, in cases where the invasion was not by the owner, landlord, or lessor of the premises. Further, it asserts that the Burmers' claims "are covered under the 'oral or written publication of material that violates a person's right of privacy' provision of Westfield's policy." (Def.'s Mem. at 9.) In addition, Pinnacle contends that the Burmers' allegations include physical

---

2 Pinnacle notes that "Westfield defended and indemnified another West Virginia Aaron's against similar claims," citing *Willis v. Aaron's, Inc.*, Raleigh County Civ. Action No. 12-C-66. (Def.'s Mem. at 4, note 2.)

manifestations of emotional distress that constitute bodily injury under the Policy, and that the compensatory damages they seek constitute property damage under the Policy. Pinnacle further emphasizes the liberal construction typically given to insurance contracts in favor of coverage. Finally, it argues that it had a reasonable expectation of coverage based on communications with Westfield, regardless of the interpretation of the policy terms.

Both parties' responses primarily reiterate the arguments made in their initial motions. Pinnacle argues that genuine issues of material fact exist with respect to its common law and bad faith claims, asserting that "an insurer may be liable for violations of the [Unfair Trade Practices Act] even if a denial of coverage was proper." (Def.'s Resp. at 15.) Westfield's response is largely devoted to countering Pinnacle's arguments regarding the invasion of privacy claim. It asserts that the language in the Policy is distinguishable from the language found in the cases cited by Pinnacle, such that no ambiguity exists. Westfield further responds that the doctrine of reasonable expectations is not applicable under the facts of this case.[3]

In West Virginia, courts "accord the language of an insurance policy its common and customary meaning." *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 693 S.E.2d 53, 57-58 (2010). If, after giving the language its customary meaning, the provisions in an insurance policy "are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syl. pt. 1, *Kelly v. Painter*, 504 S.E.2d 171, 172 (1998). Courts are to determine whether a contract is ambiguous as a question of law. Syl. pt. 4, *Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 897 (2009) (noting that "[t]he mere fact that parties do not agree to the construction of a contract does not render it

---

3 Both parties also filed replies to the respective motions for summary judgment, in which they reiterate and expand upon their prior arguments.

ambiguous"). Courts must give full effect to the plain meaning of clear and unambiguous insurance policy contract provisions. *Id.*, Syl. pt. 2. If, however, a provision is ambiguous, courts are to construe it "against the drafter, especially when dealing with exceptions and words of limitation." *Boggs*, 693 S.E.2d at 58 (internal quotation marks and citations omitted).

Regardless of whether the language is ambiguous or unambiguous, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." Syl. pt. 3, *Farmers & Mechanics Mut. Ins. Co. of W. Virginia v. Cook*, 557 S.E.2d 801, 803 (2001) (citing Syl. pt. 7, *National Mutual Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (1987)). Thus, in cases involving determination of the scope of insurance coverage, "the plaintiff bears the burden of establishing a prima facie case that the claim falls within the scope of coverage. Once a prima facie case has been established, the burden shifts to the insurer to demonstrate that an exclusion applies." *Runion v. Minnesota Life Ins. Co.*, 2013 WL 2458541, at *2 (S.D. W. Va. June 6, 2013) (Chambers, C.J.) (internal citation omitted).

The West Virginia Supreme Court described the standard for determining whether an insurance company has a duty to defend an insured as follows:

> An insurance company's duty to defend an insured is broader than the duty to indemnify under a liability insurance policy. An insurance company has a duty to defend an action against its insured if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If, however, the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

*Bowyer v. Hi-Lad, Inc.*, 609 S.E.2d 895, 912 (W. Va. 2004). Courts are to consider whether the allegations in the underlying complaint against the insured are "reasonably susceptible of an

9

interpretation that the claim may be covered by the terms of the insurance policy." Syl. pt. 4, *Tackett v. Am. Motorists Ins. Co.*, 584 S.E.2d 158, 158–60 (W. Va. 2003) (internal quotation marks and citations omitted). An insurer must defend all claims against the insured if any claims fall within the policy coverage. *Id.* at 163. Further, "[a]ny question concerning an insurer's duty to defend under an insurance policy must be construed liberally in favor of an insured where there is any question about an insurer's obligations." *Id.*, Syl. pt. 5, at 160.

The Court finds that Coverage A, for bodily injury and property damages, is not applicable to the Burmers' claims because there was no "occurrence" under the terms of the Policy. An 'occurrence' is defined by the policy as an accident. Accident, in turn, has been defined under West Virginia law as "a chance event or event arising from unknown causes." *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 492 (W. Va. 2004). The United States District Court for the Southern District of West Virginia echoed an earlier West Virginia Supreme Court of Appeals finding that, "for an event to be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual." *State Auto. Property and Cas. Ins. Co. v. Edgewater Estates, Inc.*, 2010 WL 1780253 at *3 (S. D. W.Va. April 29, 2010) (Faber, J.) (unreported) (internal quotations and citations omitted). Additionally, the West Virginia Supreme Court has cautioned that whether an incident was accidental should be viewed from the perspective of the insured. *Columbia Cas. Co. v. Westfield Ins. Co.*, 617 S.E.2d 797, 801 (W. Va. 2005).

The Burmers' claims involve intentional conduct on the part of Pinnacle and its agents and employees. Because both the means and the result must be unforeseen for the event to be considered an accident, Pinnacle's argument that any legal violation resulting from the intentional debt-collection activities would have been unintended is unavailing. The debt-collection

activities are the alleged means of the Burmers' distress and legal claims, and those activities were intended. Thus, no coverage is available under Coverage A for bodily injury or property damage.

The Policy also provides coverage for personal and advertising injury. The parties focused primarily on Section V.14(c), which states that personal and advertising injury includes "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or less." (Policy, § V.14(c)) (Document 55-1, at 17.) The facts of this case do not support application of that section. The Burmers do not allege that the invasion of their privacy was "committed by" the owner, landlord, or lessor of the premises.[4]

Pinnacle briefly asserts that the provision providing coverage for "oral or written publication of material that violates a person's right of privacy" applies to the Burmers' claim for invasion of privacy. (Def.'s Resp. at 12.) The Court finds otherwise. A natural reading of the provision demonstrates that it refers to publication of private material, implicating a privacy interest in secrecy, rather than the use of telephone calls to intrude upon a person's seclusion.[5] The West Virginia Supreme Court, interpreting the provision in a previous case involving Westfield, found that the provision did not import the legal requirements of defamation. *Bowyer v. Hi-Lad, Inc.*, 609 S.E.2d 895, 912 (W. Va. 2004). Nonetheless, the Court finds that the provision refers to secrecy based claims, as opposed to intrusion upon seclusion-type claims, which are covered in subsection (c), as discussed above.

---

[4] The Court finds that the inclusion of the phrase 'committed by' eliminates the ambiguity present in the cases cited by Pinnacle, in which courts found similar provisions to be subject to multiple interpretations.

[5] Courts often divide privacy rights into two subsets: secrecy, as for concealing information, and seclusion, as in avoiding unwanted intrusions into one's home. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 64–41 (2005) (citing *Am. States Ins. Co. v. Capital Assoc.s of Jackson County, Inc.*, 392 F.3d 939, 941 (2004).

Interpreting a similar provision and applying Virginia law, the Fourth Circuit Court of Appeals found that unsolicited faxes did not trigger coverage because the privacy interest potentially invaded by "[m]aking known to any person or organization written or spoken material that violates a person's right to privacy" is an interest in secrecy, while the faxes potentially invaded an interest in seclusion. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 641 (4th Cir. 2005) (stating that "the plainest and most common reading indicates that…the injured party is the one whose private material is *made known*, not the one *to whom* the material is made known") (emphasis in original). Thus, neither type of coverage provided in the Policy is available for the Burmers' claims against Pinnacle.

Still, Pinnacle argues that it had a reasonable expectation of coverage, even if the policy terms do not provide for coverage. It bases that expectation on (a) Westfield's response following the request for coverage, and (b) Westfield's knowledge about Pinnacle's business and exposure to suits of this nature. "[T]he doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syl. pt. 4, *Luikart v. Valley Brook Concrete & Supply, Inc.*, 613 S.E.2d 896, 897 (W. Va. 2005) (internal quotation marks and citations omitted). In addition to assisting in the interpretation of ambiguous insurance contracts, the doctrine of reasonable expectations applies to cases "in which a policy provision on which denial of coverage is based differs from the prior representations made to the insured by the insurer." *New Hampshire Ins. Co. v. RRK, Inc.*, 736 S.E.2d 52, 58 (W. Va. 2012). Pinnacle is unable to cite any evidence that Westfield represented to Pinnacle that the Policy would cover suits alleging unlawful debt

12

collection practices. Instead, Pinnacle relies on its agent's assumptions that such suits would be covered. Those assumptions, based only on Westfield's understanding of Pinnacle's business model, do not constitute an objectively reasonable expectation for coverage.

The Court concludes that the Policy does not provide coverage for the claims asserted by the Burmers. Having found that the Burmers' claims are not covered by either the unambiguous language of the Policy or any reasonable expectation fostered by Westfield, the Court finds that the common law and bad faith claims cannot be supported. Accordingly, Westfield's motion for summary judgment must be GRANTED, and Pinnacle's motion for partial summary judgment must be DENIED.

## CONCLUSION

WHEREFORE, after careful consideration, based on the findings herein, the Court **ORDERS** that *Plaintiff Westfield Insurance Company's Motion for Summary Judgment* (Document 53) be **GRANTED**, and that *Defendant Pinnacle Group LLC's Motion for Partial Summary Judgment* (Document 55) be **DENIED**.

The Court further **ORDERS** that any pending motions be **TERMINATED AS MOOT** and that this matter be **REMOVED** from the Court's docket. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 7, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA